Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1683 | **DATE** | 7/19/2010 |
| **CASE TITLE** | Lougheed vs. Village of Mundelein | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the Court denies defendant's motion for summary judgment [docket no. 28]. The case is set for a status hearing on July 28, 2010 at 9:30 a.m. for the purpose of setting a trial date.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Ryan Lougheed has sued the Village of Mundelein under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, for terminating him based on a perceived disability. The Village has moved for summary judgment. For the following reasons, the Court denies the motion.

On February 6, 2006, the Village hired Lougheed as a patrol officer with the police department. Lougheed was a probationary employee who could be terminated for any non-discriminatory reason. The employment application process required Lougheed to complete a medical examination report, in which he indicated that he had not seen a physician, surgeon or other practitioner in the past seven years. He also indicated that he did not have vision defects.

On or about April 11, 2006, Lougheed's field training officer, Officer Bryan Kisselberg, observed that during the night shift, Lougheed had trouble seeing the keys on the mobile data terminal's (MDT) keyboard in his vehicle as well as difficulty seeing numbers and letters on license plates. Kisselberg informed Lougheed that he may need glasses and suggested he get his eyes checked.

On April 25, 2006, an optometrist determined that Lougheed had 20/20 daylight vision but was unable to examine his night vision. The optometrist referred Lougheed to Bryan Traubert, M.D., an ophthalmologist. On May 8, 2006, Dr. Traubert examined Lougheed but could not assess his night vision. Dr. Traubert indicated in a doctor's note that Lougheed had night vision problems and that he was in the process of establishing a diagnosis. The note also stated that Lougheed "should avoid night driving until [they] establish a diagnosis." Def.'s Ex. G. That same evening, Lougheed worked the night shift. On May 9, 2006, at approximately 5:40 a.m., Lougheed gave the doctor's note to his supervisor, Sergeant John Monahan. Because of the note, Monahan immediately placed Lougheed on unpaid medical leave and told him that he needed to submit a medical release signed by a doctor to return to work.

**STATEMENT**

On or about May 12, 2006, Officer Cameron Eugenis learned that contrary to what Lougheed had indicated on his medical form, he had visited an optometrist and was prescribed glasses while working for the police department in Traverse City, Michigan. Soon thereafter, in a letter dated May 18, 2006, Chief Raymond Rose informed Dr. Traubert that "police officers must be able to respond in dark buildings" and that by May 23, 2006, he needed to know "when . . . Lougheed can be expected to return to full unrestricted duty." Pl.'s Ex. I. On May 19, 2006, Lougheed informed Eugenis that tests performed on May 17 were inconclusive and that he had another exam scheduled for May 23, 2006. Lougheed informed Eugenis that those results could take another week or more. On May 22, 2006, Rose provided Lougheed with an order of termination.

A plaintiff is disabled under the ADA if he is "regarded" as having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102 (1). The term "major life activities" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* at (2)(A). "A 'regarded as' claim turns on the employer's perception of the employee" as disabled. *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); *see also Brunker v. Schwan's Home Serv., Inc.,* 583 F.3d 1004, 1008 (7th Cir. 2009).

Lougheed claims that the Village believed that his alleged nighttime vision difficulties substantially limited his ability to see and work. Similarly, *Capobianco* involved a plaintiff who lost his job as a sanitation worker because he suffered from night blindness. In the district court, the plaintiff argued that his night blindness substantially limited his major life activities of seeing and working. *Capobianco*, 422 F.3d at 58-59. On appeal, the court determined that there was sufficient evidence to find that plaintiff's "impairment substantially limited his ability to see." *Id.* at 59.

In this case, the evidence shows that the Village believed that Lougheed's night vision problems extended beyond simply driving at night. For instance, Rose testified that he understood Dr. Traubert's note to mean that Lougheed was not able to do various activities at night, including "driving, going into dark buildings, [and] doing area searches in the dark." Rose Dep., 15. Rose also testified that the note restricted Lougheed from working in the day because "if there's a situation that occurs in a warehouse or the [sic] kind of an environment, even a residential home that requires him to be able to go in and do searches or make observations, . . . [Dr. Traubert's note] identif[ied] that there was a shortcoming in his ability to do that." Rose Dep. 16. Likewise, Eugenis, who was partly responsible for investigating the facts of this case, testified that he believed Lougheed was restricted from doing activities other than just driving at night. He stated that Lougheed could not work in the day because he "cannot go into a dark building, or into a dark room." Eugenis Dep., 46.

The evidence supports a finding that the Village regarded Lougheed to be substantially limited in his vision or ability to see, which is a major life activity. This Court thus need not determine whether Lougheed was substantially limited in the major life activity of working. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) ("[W]orking [is to] be viewed as a residual life activity . . . *only* if an individual is not substantially limited with respect to *any other* major life activity.") (emphasis in original) (quotation marks and citation omitted).

Disability discrimination requires a plaintiff to show that he suffered an adverse employment action because of his disability. *See Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 961-62 (7th Cir. 2010). The Village contends that it terminated Lougheed not because of his vision problems, but because he exhibited poor judgment by showing up to work on May 8, 2006 despite his doctor's instructions and because he lied on the pre-employment application form. Lougheed claims that the Village's proffered reasons are a pretext for discrimination.

## STATEMENT

"Pretext may be established directly with evidence that [the defendant] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's examination is not credible." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993). In letters to Dr. Traubert and Lougheed, the Village expressed its concern about Lougheed's vision, sought to know when he could return to full unrestricted duty, and stated that failure to receive more information could result "in discipline up to and including termination." Pl.'s Ex. I. Lougheed also states that higher-ups in the police department made statements to him suggesting they would fire him because of his poor vision. Based on the evidence, a jury could find that the Village fired Lougheed because it believed his vision disabled him rather than for the reasons the Village cites.

For the foregoing reasons, the Court denies defendant's motion for summary judgment.